IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DEC 2 1999

ROB FARMER                      :
                                :
     v.                         :  CIVIL NO. L-98-1585
                                :
DR. DAVID RAMSAY, et al.        :
                                :

## MEMORANDUM

Now before the Court is the defendants' Motion to Bifurcate. The parties have thoroughly briefed the issues, and the Court finds that a hearing is not necessary. See Local Rule 105.6 (D. Md. 1999). For the reasons stated herein, the defendants' Motion to Bifurcate shall be, by separate Order, GRANTED.

## Background

The plaintiff, Rob Farmer, a white male, filed this action against the University of Maryland at Baltimore ("UMB"), the University of Maryland School of Medicine ("UMSM"), and three officials of the two institutions.[1] The Complaint alleges that Farmer was denied admission to UMSM on the basis of race. (Amend. Compl. at ¶ 28).

Farmer filed this lawsuit on May 18, 1998. The essence of

---

[1] In the Complaint, Farmer named Dr. David J. Ramsay, President of UMB; Dr. Donald E. Wilson, Dean of UMSM; and Dr. Milford M. Foxwell, Jr., Director of Admissions for UMSM.

1

Farmer's Complaint is that his second application to UMSM would have qualified him for admission had he been considered as a minority applicant.[2] Farmer alleges that "the average MCAT scores for blacks who were accepted to UMSM was lower than the average MCAT scores for whites who were rejected without even being interviewed." (Amend. Compl. at ¶ 29). The Complaint further alleges this disparity results from a UMSM "policy of preferring blacks and members of other minority groups for admission." (Amend. Compl. at ¶ 30). The defendants moved to dismiss the case. This Court granted in part and denied in part the defendants' motion. See Farmer v. Ramsay 41 F.Supp.2d 587 (D. Md. 1999). Farmer amended his complaint in accordance to this Court's Order accompanying that memorandum.

The defendants contend that race did not play a role in any of the rejections of Farmer from UMSM.[3] Instead, they state that:

---

[2]Farmer applied for admission to UMSM twice. He agrees that his first application did not qualify him for admission. However, he argues that by the time of his second application, his Medical Colleges Admissions Test ("MCAT") scores had improved markedly, and he was thus qualified. The background of this case is laid out in more detail in the memorandum accompanying this Court's Order granting in part and denying in part the defendants' Motion to Dismiss. Farmer v. Ramsay 41 F.Supp.2d 587 (D. Md. 1999).

[3]At the request of the Court, the defendants have proffered evidence which, if substantiated, attributes Farmer's second rejection to poor letters of recommendation from his pre-medical committee at Towson University. (See Defs. Mem. Supp. Mot. Bifurcate at 9-10).

2

> UMSM does not segregate applications into different pools or groupings based on the race of the applicant. Rather, each applicant is considered individually and is evaluated based on his or her potential to be an effective medical student (and physician) in both the academic and clinical components of the curriculum, and to contribute to the collective educational experience at the UMSM.

(Def. Mem. Supp. Mot. Bifurcate at 3).

The defendants acknowledge that in analyzing an applicant's relatively low MCAT score, "race may be a factor." (Id. at 4). The plaintiff interprets this statement to mean that the defendants have a practice of "accepting minority students with vastly lower test scores than those of rejected white applicants." (Pl. Mem. Opp. Defs'. Mot. Bifurcate at 2-3).

The defendants have moved to bifurcate the case. They propose a first stage to determine if any racial barriers exist in the admissions process which rejected Farmer. Only if the plaintiff prevails on the first issue would the case proceed to an analysis of whether the use of race in the admissions process violated Farmer's legal rights.

## Discussion

A court may order bifurcation of a case when doing so promotes convenience or is "conducive to expedition and economy." Fed. R. Civ. P. 42(b). The party seeking bifurcation must show that judicial economy would be served and that no party would be prejudiced. Ultimately, the decision on whether to bifurcate is a matter of discretion for the district

court. See, e.g., Novopharm Ltd. v. Torpharm, Inc. 181 F.R.D. 308, 310 (E.D.N.C. 1998).

This case differs somewhat from most affirmative action challenges of recent years. Typically, a plaintiff will challenge an existing hiring or admissions practice which creates some preference for minorities. See, e.g., Northeastern Fla. Chapter, Associated Gen. Contractors of America v. City of Jacksonville, 508 U.S. 656, 113 S.Ct. 2297 (1993)(challenging city ordinance setting aside 10% of city contracts for minority businesses); Adarand Constructors, Inc. v. Pena, 515 U.S. 200, 115 S.Ct. 2097 (1995) (challenging federal contract awarding compensation for hiring subcontractors controlled by "socially and economically disadvantaged individuals"); Alexander v. Estepp, 95 F.3d 312, 314 (4th Cir. 1996) (challenging a County Code provision which created "informal caps" by mandating that the impact on the employment of "protected classes" be taken into account in hiring); Tracy v. Board of Regents 59 F.Supp.2d 1314 (S.D.Ga. 1999) (challenging college admissions process by which certain non-caucasian applicants received a bonus on the application scoring system).

Generally, the main question for the court in affirmative action cases is whether an admitted race-based practice can

4

withstand constitutional scrutiny.[4] Discovery and litigation on this issue can be quite costly and time-consuming. Parties may, for example, need to brief extensively the question of whether diversity is a constitutionally permissible basis for any race-based classification.[5] Substantial discovery involving expert testimony on issues such as a past history of discrimination or the value of racial and ethnic diversity at educational institutions may also be necessary. See, e.g., Wessmann v. Gittens, 160 F.3d 790, 802-07 (1st Cir. 1998) (discussing at length evidence relating to the effects of the history of discrimination in the Boston school system).

In the instant case, however, the defendants deny the existence of any kind of classification system in the admissions process that could be characterized as discriminatory. As of this date, neither side has produced evidence of race-based classifications under which non-caucasian applicants are given a preference. Thus far, the record reflects only the plaintiff's assertion that UMSM accepts minority students with "vastly lower test scores than

---

[4] The central question in Northeastern Florida was the standing of the plaintiff. Underlying the dispute, however, was the issue of whether the admitted set-aside was constitutional.

[5] The Fourth Circuit has explicitly reserved the issue of whether diversity is a compelling government interest. See Eisenberg v. Montgomery Co. Public Schools, __ F.3d __, No.98-2503, slip op. at 11 (4th Cir. Oct. 6, 1999).

those of rejected white applicants." The defendants state that an applicant's low MCAT score may be balanced by other circumstances in the applicant's life, and that race "may be a factor" in this analysis. The basic issue of the existence of a race-based classification is thus in dispute and will likely require extensive discovery to resolve.[6] The Court therefore deems it appropriate to address this question first. If discovery establishes that race did not play any role in Farmer's rejection, then both parties will be spared the further time and expense of litigating the constitutional merits of the UMSM's admissions policy. If not, then the parties may proceed to the next question of whether the system employed by UMSM withstands constitutional scrutiny.

It is vital to note, however, that the question in this first phase of the litigation is **not** simply whether or not Farmer would have been admitted to UMSM had he been a minority. Rather, the question is whether race played any role in the admissions process. It is entirely possible that Farmer's academic credentials and recommendations precluded his

---

[6]The plaintiff claims that the defendants are simply "lying" about what policies they employ in UMSM admissions as a means of avoiding judicial scrutiny. (See Pl. Mem. Opp. Def. Mot. Bifurcate at 16.) The Court does not agree. The admissions system the defendants have described is different from more typical systems of racial preferences and merits careful analysis. If, of course, the plaintiff is correct in his assertion, then he will have an easy time meeting his burden in this first phase of the case.

admission regardless of his race.[7] Even in this situation, however, if the plaintiff was subjected to a discriminatory process, he may have suffered a constitutional injury. See Northeastern Fla., 508 U.S. at 666, 113 S.Ct. at 2297 ("The 'injury in fact' ... is the denial of equal treatment, ... not the ultimate inability to obtain the benefit.") (citation omitted); see also Texas v. Lesage, __ U.S. __, 120 S.Ct. 467, 468-69 (1999); Adarand, 515 U.S. at 211, 115 S.Ct. at 2105 ("the injury ... is that a 'discriminatory classification prevent[s] the plaintiff from competing on an equal footing'" (quoting Northeastern Fla., 508 U.S. at 667)); Alexander, 95 F.3d at 315 n.5; cf. Tracy, 59 F.Supp.2d at 1321 (finding that the plaintiff could not have been admitted under university's admissions process even had he received the minority preference, but going on to find the process itself constitutionally suspect). In such a situation, the Court would have the power to remedy this injury by enjoining the UMSM's admissions process. Therefore, the central issue for the parties to address in this first stage is what role, if any, race plays in the UMSM's admissions process.

Similarly, Farmer's standing to challenge the admission

---

[7]The defendants have proffered evidence on this point which the plaintiff contests. At this stage of the litigation, the Court simply notes that the merits of Farmer's qualifications are a matter of dispute between the parties.

process is not dependent on his academic qualifications. As this Court noted in its Memorandum concerning the defendants' Motion to Dismiss, Fourth Circuit law clearly follows the Supreme Court in holding that being forced to compete in a discriminatory process constitutes an injury sufficient to establish standing. See Farmer, 41 F.Supp. at 593. See also Adarand, 515 U.S. at 211; Alexander, 95 F.3d at 315 n.5. In denying in part the defendants' Motion to Dismiss, this Court found the plaintiff had standing. Its opinion on this point is unchanged.

Farmer's qualifications are, however, relevant to his entitlement to "personal relief." Alexander, 95 F.3d at 317. Farmer has sought compensatory damages and injunctive relief ordering his admission to UMSM. (See Amend. Compl. at ¶¶ 44, 49, 56, 57). Such relief is warranted only if he establishes that aside from his race he was otherwise qualified for admission to UMSM. The Court expects the parties to address the merits of Farmer's application as part of the analysis of the UMSM admission process during the first phase of the case. The evidence produced on this matter will be helpful in determining Farmer's entitlement to personal relief.

Thus, little, if any, prejudice to the plaintiff will result from bifurcation. At the conclusion of the first phase of the case, the Court will have to determine whether race

played a role in the UMSM admissions process that rejected Farmer.  It will also have an understanding of the merits of his application aside from race, since such information will be helpful, though not dispositive, in answering the first question.  The Court will thus be able to determine whether the plaintiff is entitled to immediate personal injunctive relief, which is the issue the most time-sensitive to him.  This will almost certainly be faster than delaying a decision until after the parties have undertaken extensive discovery on issues including diversity in education and the history, if any, of discrimination at the relevant institutions.

## Conclusion

For the aforementioned reasons, the Court shall by separate Order GRANT the defendants' Motion to Bifurcate.

Dated this 29th day of Dec, 1999.

_____
Benson Everett Legg
United States District Judge